COMMISSARIAT A L'ENERGIE ATOMI-
QUE et al., Appellants,

v.

Robert C. WATSON, Commissioner of
Patents et al., Appellees.

No. 14929.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 17, 1959.

Decided Jan. 21, 1960.

Mr. James L. Morrisson, Washington, D. C., for appellants.

Mr. Joseph Schimmel, Atty. U. S. Patent Office, with whom Mr. Clarence W. Moore, Solicitor, U. S. Patent Office, was on the brief, for appellees.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a patent case. Appellants (plaintiffs below) appeal from a decision of the District Court granting appellees' motion to dismiss appellants' complaint on the ground that it failed to state a cause of action and that the court lacked jurisdiction over the subject matter.

Appellants' complaint sought to review the refusal of the Commissioner of Patents to revive an application for a patent covering certain processes for the production of nuclear energy, and the refusal of the Board of Appeals of the Patent Office to reconsider its affirmance on November 17, 1950, of the Patent Examiner's original denial of the patent. Both the request for revival and

the request for reconsideration were founded on alleged new evidence which would, appellants claimed, have shown that a patent should have been granted. In asking the District Court to review the denials of these requests to revive and reconsider, appellants maintained that the District Court had jurisdiction with respect to the revival decision because the Commissioner failed to make findings in accordance with Section 133 of Title 35 U.S.C. (1958).[1] It was asserted that these omissions involved failure to exercise the discretion required by statute and were reviewable in the District Court by writ of mandamus. With respect to the Board of Appeals' refusal to reconsider, appellants asserted that denial of this request constituted a final decision on the merits of a patent application which was reviewable by the District Court under Section 145 of Title 35 U.S.C. (1958).[2]

The background, in brief, is this: On April 5, 1940, appellants—members of an agency of the French Government—applied for a United States patent on an apparatus for the production of energy by a nuclear chain reaction. The Patent Examiner rejected the application on November 8, 1941, because the subject matter was not "sufficiently useful and important," given the then state of the art. On May 5, 1942—before appellants' time for appeal to the Board of Appeals had expired—the application was placed under a Patent Office secrecy order and further proceedings were suspended until 1949. During this interval the application was vested in the Alien Property Custodian, and appellants claim that evidence which was relevant to the application was put under additional secrecy restrictions by the passage of the Atomic Energy Act of 1946, 60 Stat. 755, 42 U.S.C.A. §§ 1801–19 *. In 1949, while the application was still controlled by the Alien Property Custodian, and while the allegedly relevant information was still (according to appellants) under Atomic Energy Act secrecy restraints, the Patent Office lifted its secrecy order and resumed proceedings. On November 17, 1950, the Board of Appeals affirmed the Examiner's rejection of the application. For some time, no further action was taken by anyone. In 1954, the application was returned to appellants by the Alien Property Custodian. Appellants did not proceed immediately in the Patent Office, but waited until August 29, 1955, by which time, they claim, sufficient data restricted under the Atomic Energy Act had been declassified so that they could, for the first time, disprove the findings of the Patent Examiner and Board of Appeals. On that date appellants petitioned the Commissioner to revive their application, invoking Section 133 of Title 35 of the U.S.C. The petition was denied on July 10, 1956, and requests for reconsideration were denied on February 26, 1957, July 15, 1957, February 14, 1958, and May 2, 1958. Appellants filed their complaint in the District Court on July 1, 1958, and the proceedings in that court led to this appeal.

1. Section 133 provides as follows:
"Upon failure of the applicant to prosecute the application within six months after any action therein, of which notice has been given or mailed to the applicant, or within such shorter time, not less than thirty days, as fixed by the Commissioner in such action, the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable."

2. Section 145 provides in pertinent part:
"An applicant dissatisfied with the decision of the Board of Appeals may * * have remedy by civil action against the Commissioner in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints. The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Appeals, as the facts in the case may appear and such adjudication shall authorize the Commissioner to issue such patent on compliance with the requirements of law. * * *"

* Now § 2011 et seq.

**596**

■ It is clear that at the time appellants' complaint was filed the District Court had no jurisdiction to consider the merits of the patent application under Section 145 of Title 35 U.S.C. Section 145 requires complaints to be filed in the District Court "within such time after [the Board's] decision, not less than sixty days, as the Commissioner appoints." The Commissioner has appointed sixty days.[3] Whatever effect may be given to the fact that the application was vested in the Alien Property Custodian at the time of the Board's decision, much more than sixty days elapsed between the date of the return of the application to appellants and their filing of a complaint in the District Court. The time for bringing suit under Section 145 has thus long since run. There is nothing to indicate that appellants have ever made application to the Commissioner for an extension of time within which to bring suit. See Grady v. Watson, 1958, 104 U.S.App.D.C. 286, 261 F.2d 752; Eckey v. Watson, 1959, 106 U.S.App.D.C. 16, 268 F.2d 891. The dismissal of the complaint insofar as it seeks relief under Section 145 will accordingly be affirmed, without prejudice to the making of an appropriate application to the Commissioner under the rule of the Eckey case, and without prejudice to such proceedings for reinstatement of the complaint as may be proper in the event the Commissioner grants the application.

■ However, with respect to the Commissioner's refusal to revive the application, after request made under Section 133 of Title 35, we think that appellants' complaint states a cause of action over which the District Court had jurisdiction. Section 133, impliedly permitting the Commissioner to revive a patent application, requires an applicant to show "to the satisfaction of the Commissioner that * * * delay [in prosecuting the application] was unavoidable": otherwise, the application "shall be regarded as abandoned." True, in the days when appeals from decisions of the Commissioner were taken directly to the Court of Appeals of the District of Columbia, it was held that the then governing statutes did not authorize an appeal from a decision denying revival of an application. In re Carvalho, 1918, 47 App.D.C. 584. Later, in a case where suit was brought in the Supreme Court of the District of Columbia under Section 4915 of the Revised Statutes (the predecessor of Section 145 of Title 35), it was held that the Commissioner's refusal to revive an application was not cognizable in such a suit. Chessin v. Robertson, 61 App.D.C. 376, 63 F.2d 267, certiorari denied, 1933, 289 U.S. 725, 53 S.Ct. 523, 77 L.Ed. 1475. A like decision was rendered in Cregier v. Coe, 1933, 62 App.D.C. 320, 67 F.2d 692, certiorari denied, 1934, 291 U.S. 683, 54 S.Ct. 560, 78 L.Ed. 1070. We have no quarrel with those holdings. As the court pointed out in the Cregier case, "The denial of a motion to revive an application is not equivalent to the refusal to grant a patent," and such refusal is the sole basis for a suit under Section 4915.[4] Id. 62 App.D.C. at page 321, 67 F.2d at page 693. Dicta may be found in Chessin and Cregier that a denial by the Commissioner of a request for revival "is not subject to judicial review." But this cannot mean that mandamus will never lie to correct an arbitrary or capricious action by the Commissioner in respect of a request for revival.

The Commissioner doubtless possesses a large measure of discretion in matters of this sort. The statute does not, however, purport to make that discretion plenary and unreviewable; it speaks of a showing "to the satisfaction of the Commissioner." Many years ago the Supreme Court construed similar language in a statute which provided that "where it shall appear to the satisfaction of the Secretary of the Interior" that excessive payments had been made

---

3. Rule 304, Rules of Practice of the U. S. Patent Office in Patent Cases, 35 U.S.C. Appendix.

4. Or its successor, Section 145 of Title 35.

to the Government, the "excess shall be repaid." The Court emphatically denied that this provision allowed the Secretary to refuse repayment in his "uncontrolled judgment and discretion," where the facts were not in dispute and where as a matter of law a debt existed. United States v. Laughlin, 1919, 249 U.S. 440, 39 S.Ct. 340, 341, 63 L.Ed. 696. Similarly, in cases like the present, where valuable rights are at stake, the Commissioner's discretion cannot remain wholly uncontrolled, if the facts clearly demonstrate that the applicant's delay in prosecuting the application was unavoidable, and that the Commissioner's adverse determination lacked any basis in reason or common sense. No doubt the courts should be and will be extremely reluctant to disturb the Commissioner's decision in a matter of this sort.[5] But jurisdiction exists, though the occasion for its exercise may only rarely arise.

■ Appellants further allege that they requested, but did not receive, "specific findings of fact setting forth the basis for * * * [the Commissioner's] determination"[6] that the application for revival should be denied. Although Section 133 does not require an affirmative finding that the delay was avoidable, the Commissioner should tell the applicant—at least if a timely request for findings is made, as appellants here claim—why his plea was unavailing, in order to provide an adequate basis for judicial review. Under comparable circumstances, we have held that the courts may require the making of explicit findings. See Coffey v. Jordan, 1959, 107 U.S.App.D.C. ——, 275 F.2d 1. Such findings are particularly necessary where, as here, appellants also allege their ability to prove facts (set forth in the complaint and certainly not of obviously frivolous character) which they say would cause the Commissioner, in the proper exercise of his discretion, to hold in their favor. Cf. Greensboro-High Point Airport Authority v. Civil Aeronautics Board, 1956, 97 U.S.App. D.C. 358, 231 F.2d 517.

■ For these reasons, we hold that the complaint's prayer for mandamus, and its attendant request for findings of fact, stated a cause of action over which the District Court should have exercised jurisdiction. The judgment of the District Court will be reversed with respect to this aspect of the complaint, and the cause will be remanded for further proceedings not inconsistent with this opinion. See Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 142, 71 S.Ct. 624, 95 L.Ed. 817. Inasmuch as the Patent Office has not filed an answer, but has simply filed a motion to dismiss, the Commissioner should be given a reasonable time to submit findings on a voluntary basis, and/or to file an answer to the allegations of the complaint, or take other appropriate action, as he may be advised.

The judgment of the District Court will be affirmed in part and reversed in part, and the cause remanded for further proceedings.

So ordered.

5. See, on the general problem, Davis, Administrative Law 842–67 (1951).

6. The complaint says:
"In a petition for reconsideration addressed to defendant Crocker, plaintiffs requested a specific determination whether the delay in further prosecuting the application was avoidable or unavoidable, and requested specific findings of fact setting forth the basis for that determination. This request was ignored."