**Jerold B. SMITH and The Cardinal Corporation, Appellants,**

v.

**Gerald J. MOSSINGHOFF, Commissioner of Patents and Trademarks, Appellee.**

**No. 81–1154.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1981.

Decided Jan. 22, 1982.

Before ROBINSON, Chief Judge, WRIGHT, Circuit Judge, and JACK R. MILLER, Judge.*

Opinion for the court filed by Judge MILLER.

MILLER, Judge:

This appeal is from the order and judgment of the district court granting motion of defendant-government ("Commissioner") to dismiss a mandamus action of plaintiffs-appellants ("Smith") to require the United States Patent and Trademark Office ("PTO") to revive an abandoned application for a patent and to issue a patent thereon.[1] Abandonment was finally determined by a decision of the Deputy Assistant Commissioner of the PTO dated September 17, 1979, responding to a renewed petition un-

---

* Of the United States Court of Customs and Patent Appeals, sitting by designation pursuant to 28 U.S.C. § 293(a).

1. *Smith v. Diamond*, 209 USPQ 1091 (D.D.C. 1981).

der 37 CFR 1.137 [2] to revive the application. We affirm.

The basis of the PTO's determination was that Smith had not provided "sufficient grounds for establishing unavoidable delay in prosecuting [his] application within the meaning of 35 U.S.C. § 133 and 37 CFR 1.137." 35 U.S.C. § 133 provides:

Upon failure of the applicant to prosecute the application within six months after any action therein, of which notice has been given or mailed to the applicant, or within such shorter time, not less than thirty days, as fixed by the Commissioner in such action, the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable.

It is uncontested that Smith failed to take action until twenty-two days after the time had expired.

## BACKGROUND

In its opinion, the district court set forth the following summary from the administrative file of Smith's patent application:

| Dates | Events |
|---|---|
| Dec. 6, 1976 | Plaintiff filed patent application serial #748,001 entitled SOLVENT RECOVERY SYSTEMS. |
| Nov. 1, 1977 | Patent Office advised plaintiff that all claims pending in application had been examined and rejected. |
| Feb. 3, 1978 | Plaintiff filed an amendment to the application. |
| Mar. 16, 1978 | Patent Office advised plaintiff that all claims were still rejected. The rejection was made *FINAL* and plaintiff was given a period of three months in which to respond or the application would become abandoned. |
| June 7, 1978 | Plaintiff requested an extension of one month in response time giving as a justification "inability to respond ... due to extensive out-of-state travel." |
| June 12, 1978 | Request for extension approved. |
| June 13, 1978 | Plaintiff and his attorney met with the patent examiner. Agreement with respect to the claims was not reached. |

| Dates | Events |
|---|---|
| July 14, 1978 | Plaintiff amended application again. |
| Aug. 31, 1978 | Patent Office advised plaintiff's attorney that he had six months *"FROM THE DATE OF THE FINAL REJECTION"* to respond. |
| Sept. 19, 1978 | Application became abandoned due to plaintiff's failure to respond within the six months period. |
| Oct. 10, 1978 (22 days late) | Plaintiff filed *PETITION TO REVIVE* claiming failure to observe time limit was "due to excusable confusion over the time to file a response." |
| Dec. 20, 1978 | Patent Office denied petition to revive noting that the "record is inadequate to establish unavoidable delay within the meaning of 35 U.S.C. 133." |
| Jan. 9, 1979 | Plaintiff's attorney wrote Commissioner of Patents describing errors in filing made by his office and urged again the revival of the application. Plaintiff's attorney argued that the delay was unavoidable due primarily to confusion among his staff regarding the significance of the notice and secondarily to the inability of counsel to review it himself due to a deposition and trial in another matter. |
| Feb. 20, 1979 | Patent Office dismissed petition pointing out that the record still did not support a finding that the delay was unavoidable. |
| May 3, 1979 | Plaintiff's attorney submitted further material to the Patent Office. |
| May 30, 1979 | Patent Office considered latest material submitted and concluded that there was no adequate verified showing of a cause for unavoidable delay. The petition was dismissed. |
| July 5, 1979 | Plaintiff requested reconsideration of dismissal of his petition. |
| Sept. 17, 1979 | Patent Office considered and reaffirmed its denial of the petition. |
| August 15, 1980 | Plaintiff filed this civil action #80-2071. |

Smith has not offered objection to this summary or to the district court's further findings that the six months' statutory period (measured from the date of the final rejection) for prosecuting the application did not run until midnight September 18, 1978, since September 16, 1978, fell on Saturday; that it was admitted by Smith's attorney that he personally knew of the notice (that the period for response was six

2. 37 CFR 1.137 provides:

An application abandoned for failure to prosecute may be revived as a pending application if it is shown to the satisfaction of the Commissioner that the delay was unavoidable. A petition to revive an abandoned application must be accompanied by a verified showing of the causes of the delay, by the proposed response unless it has been previously filed, and by the petition fee.

months from the date of final rejection) on or before September 18 and still took no action; and that "final rejection" is a term of art well known and understood by competent practitioners before the PTO. The district court also found that since Smith's attorney had until midnight of September 18, 1978, to act (37 CFR 1.7), he had sufficient time to take appropriate action.

The district court set forth the following summary of Smith's submissions in support of his position that failure to prosecute the application until twenty-two days after the time had expired was unavoidable for purposes of 35 U.S.C. § 133 and 37 CFR 1.137:

| Plaintiff's Submissions | Excuses (Emphasis Added) |
|---|---|
| Petition to Revive October 10, 1978 | "Due to confusion over the time to respond to the informed [*sic*, informal] response being six months for [*sic*, from] receipt, *the file was not pulled for review until* a response had been received from the inventor on *October 5, 1978*. . . . Thus the abandonment was due to excusable confusion over the time to file a response." |
| Robert Jacob's (plaintiff's Attorney) January 9, 1979 letter to Commissioner of Patents and Trademarks | "In actuality, due to applicant's attorney being concerned over the status of the case, a separate *tickler had been made up for the 16th of September*. . . ." |
| | "Upon receipt of the advisory action, as can be seen from Ms. Mankin's affidavit, she prepared the ticklers based upon the previous response is extended to run six months." The words "from the date of final rejection. . . ." did not make an impression on Ms. Mankin. |
| Notarized Statement of Robert Jacobs, January 10, 1979 | "Applicant's attorney respectfully submits that the *breakdown of the tickler system* due to the improper reading of the advisory action, coupled with the applicant's attorney's preoccupation with depositions and trial during the first two full weeks in September and moving his residence in the first week of the month of September combined to have the unavoidable delay." |
| | "Upon coming back to his office and *once again reviewing the advisory action, on the sixteenth* of September applicant's attorney first realized that the period for response 'is extended to 6 months' was modified by the date of the final rejection. |

| Plaintiff's Submissions | Excuses (Emphasis Added) |
|---|---|
| Lynn Mankin (Legal assistant) January 10, 1979 Affidavit | "Upon receipt of the advisory action [on September 5, 1978] . . . . somewhere about *the 6th or 7th of September she placed the file in the incoming mail of the attorney, Robert Jacobs*. . . . Mr. Jacobs was in New York taking depositions [and] he came back to the *office on the 15th* of September. . . ." |
| | Affiant states that *on the 18th of September* "attorney for applicant was able to review his mail and brought the action to our attention and asked if a copy had been sent to his client." |
| | "At that time he indicated a problem and *inquired as to why he had not been notified during his depositions in New York of the pendency of this action.*" |
| Robert Jacob's April 30, 1979 Affidavit | "It was not until late that afternoon [of September *18*] that the first opportunity would have arisen for him to review mail and ticklers. He believes it was at this time . . . . that he first noticed anything concerning the Smith file. . . . *He is not certain whether it was on the 18th or the 19th* when he reviewed the file and saw the advisory action. He believes it was actually on the 19th. . . ." |
| Lynn Mankin's April 30, 1979 Affidavit | "she assumes [*the advisory action*] was placed in Mr. Jacobs' incoming mail and, because of his being away from the office, *could not have been seen until at least September 18th.* |
| Robert Jacob's letter to Commissioner of Patents and Trademarks (July 5, 1979) | "[*the tickler*] *came to applicant's attorney's attention on the 18th* day of September . . . it was the *first* date applicant's attorney had even seen the action. . . ." |
| Robert Jacob's July 10, 1979 Affidavit | "On the *18th* of September, 1978 when he *reviewed the tickler*. . . ." |

The district court concluded that unavoidable delay under 35 U.S.C. § 133 was not established by internal filing errors of Smith's attorney, or by the attorney's preoccupation with other legal matters or with moving his residence, or by the attorney's inadvertence or mistake, citing *Potter v. Dann*, 201 USPQ 574, 575 (D.D.C.1978); further, that Smith was bound by the acts of his attorney since he chose him as his representative and could not avoid the consequences of the attorney's acts or omissions, citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Noting that the PTO's advisory action was "both clear and explic-

it" in stating that the period of response was extended to run 6 months "FROM THE DATE OF THE FINAL REJECTION," the district court observed that "[i]t is hard to see how one could comprehend the first part of the quoted sentence and ignore the underlined portion." Finally, the court concluded that the excuses offered by Smith were "insufficient to justify overturning the Patent Office's decision."

## OPINION

### 1. *Threshold Issue*

A threshold issue raised by Smith is whether this case should be remanded for an evidentiary hearing because, he argues, "the trial judge granted summary judgment to the Commissioner of Patents on the bare record and without holding an evidentiary hearing and absent a motion by either party."

Although the Commissioner's motion of October 20, 1980, was labeled a "MOTION TO DISMISS" pursuant to Rule 12(b)(6), Fed.R.Civ.P., it was, in effect, a motion for summary judgment under Rule 56, Fed.R. Civ.P., since it was accompanied by, *inter alia*, a "statement of material facts" comprising five pages of the record, along with the file history of the involved patent application which includes the matters summarized earlier in this opinion. The motion was also accompanied by six pages of "POINTS AND AUTHORITIES" clearly directed to the merits—whether Smith's delay in prosecuting his application was unavoidable. The sufficiency of the petition for writ of mandamus in stating a cause of action appears to have been assumed.

On November 6, 1980, Smith filed an opposition to the "motion to dismiss" and requested leave of one month to file a mem-

orandum of points and authorities. Leave to December 6, 1980, was granted. His memorandum clearly recognizes that the Commissioner's motion was directed to the merits and states:

> In the present case, the Commissioner of Patents is *not* supporting his motion of insufficiency of the complaint [sic, petition] but instead ... his ruling that the delay in this case was not unavoidable.

Indeed, Smith's memorandum declares that the "ISSUE" is—

> Whether the delay in responding to the final rejection ... was unavoidable due to an error in computation of time for response.

Although the memorandum addresses the standards for granting a motion to dismiss, it also is directed to the issue of unavoidability of delay, citing, *inter alia, Commissariat A L'Energie Atomique v. Watson*, 274 F.2d 594, 124 USPQ 126 (D.C.Cir.1960); *Potter v. Dann*, 201 USPQ 574 (D.D.C.1978); and *In re Decision Dated February 18, 1969*, 162 USPQ 383 (Comm'r Pats. 1969). Nowhere does Smith's memorandum dispute the Commissioner's statement of material facts or the file history of the involved patent application.

Accordingly, we conclude that Smith had notice and a reasonable opportunity to respond to what was, in effect, a motion for summary judgment; further, that there were no issues of material fact before the district court.[3] Although the district court mislabeled the motion a "motion to dismiss," it granted what was, in effect, a motion for summary judgment, as related earlier in this opinion. Under the circumstances, we hold that the mislabeling was harmless error.[4]

---

**3.** If it appears that there is no genuine issue of material fact, it is the court's duty to terminate the controversy without delay. *Groen v. General Foods Corp.*, 402 F.2d 708, 159 USPQ 332 (9th Cir. 1968).

**4.** In his brief on appeal, Smith properly states that material fact problems are not to be resolved on a motion to dismiss, citing *Griffin v. United States*, 537 F.2d 1130, 1137 n.21 (Temp. Emer.Ct.App.), *cert. denied*, 429 U.S. 919, 97

S.Ct. 313, 50 L.Ed.2d 286 (1976). However, he has not specified any "fact problems" and none were raised before the district court. He argues that "an evidentiary hearing would have developed, inter alia, whether the Commissioner of Patents' decisions on petitions to revive the abandoned Smith patent application was [sic] 'arbitrary or capricious'." We regard this as pure speculation, considering, particularly,

## 2. Dispositive Issue

The dispositive issue is whether the district court erred in failing to hold that the Commissioner's determination (that Smith's failure to prosecute his patent application within six months from the date of final rejection was not unavoidable under 35 U.S.C. § 133) was arbitrary, capricious, or an abuse of discretion under 5 U.S.C. § 706(2)(A).

■ The critical phrase "unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable"[5] has remained unchanged since first enacted in 1861 (section 12 of "An Act in Addition to 'An Act to promote the Progress of the useful Arts'," 12 Stat. 248, Ch. 88, 2 Mar. 1861). There is a dearth of legislative history that might provide some clue to the meaning intended by Congress for the critical phrase and, particularly, for the word "unavoidable." Cases in point are few. This court in *Commissariat A L'Energie Atomique*, 274 F.2d at 596–97, 124 USPQ at 128, said (in holding that the district court should have exercised jurisdiction over a petition for mandamus) that—

> in cases like the present, where valuable rights are at stake, the Commissioner's discretion cannot remain wholly uncontrolled, if the facts clearly demonstrate that the applicant's delay in prosecuting the application was unavoidable, and that the Commissioner's adverse determination lacked any basis in reason or common sense [citing *United States v. Laughlin*,

249 U.S. 440, 39 S.Ct. 340, 63 L.Ed. 696 (1919)].

In *Potter v. Dann, supra,* our district court held that counsel's admitted nonawareness of PTO rules did not constitute "unavoidable" delay. In *In re Decision Dated February 18, 1969, supra,* the Commissioner held that an attorney's interpretation of a rule was not unreasonable and that delay was unavoidable. Clearly the question of whether an applicant's delay in prosecuting an application was unavoidable must be decided on a case-by-case basis, taking all of the facts and circumstances into account.

■ Here, the district court emphasized three points in concluding that the excuses offered by Smith were insufficient to justify overturning the PTO's denial of relief: (1) the excuses contained conflicting statements; (2) the preoccupation of Smith's attorney with other legal matters or moving his residence did not relieve Smith of compliance with PTO regulations; and (3) Smith's attorney, admittedly aware on September 18, 1978, of the notice of August 31, 1978, had sufficient time to take appropriate action to avoid abandonment.[6] Taking all of the facts and circumstances into account, and, particularly, those emphasized by the district court, we hold that the Commissioner's refusal to revive Smith's abandoned patent application, because the delay in prosecution was not unavoidable, did not lack any basis in reason or common sense and was, therefore, not arbitrary, capricious, or an abuse of discretion.

It follows that the district court did not err in failing to hold to the contrary.

---

that the file history of his patent application was before the district court.

**5.** Although the phrase "satisfaction of the Commissioner" in 35 U.S.C. § 133 might, at first blush, appear to provide for such "agency discretion by law" as would deny judicial review (5 U.S.C. § 701), we are satisfied that the latter phrase is to be narrowly construed to refer to those instances where "plenary and unreviewable" authority is otherwise indicated. *Commissariat A L'Energie Atomique v. Watson*, 274 F.2d at 596, 124 USPQ at 128. Therefore, the district court had jurisdiction to determine whether the Commissioner's action denying relief to Smith was arbitrary, capricious, or

an abuse of discretion under 5 U.S.C. § 706(2)(A). *See Legille v. Tegtmeyer,* 382 F.Supp. 166, 168 n.8, 172, 182 USPQ 102, 103 n.8, 106 (D.D.C.1974), *rev'd on other grounds, Legille v. Dann,* 544 F.2d 1, 191 USPQ 529 (D.C.Cir.1976).

**6.** We note that in the excuses summarized earlier in this opinion, Smith never explained why his attorney, presumably knowledgeable of the meaning of "final rejection" from the date of which the six-month period for action is measured, failed to take appropriate action on September 18, 1978, when there was still sufficient time to do so.

The judgment of the district court is affirmed.[7]

---

7. In view of our decision, it is unnecessary to consider the Commissioner's argument that Smith had not exhausted his administrative remedies because, as noted by the district court, there was a "substitute application" pending before the PTO.