**Shila MORGANROTH,**
**Plaintiff–Appellant,**

v.

**Donald J. QUIGG, Honorable, Commissioner of Patents and Trademarks, Defendant–Appellee.**

No. 89–1124.

United States Court of Appeals, Federal Circuit.

Sept. 8, 1989.

George H. Mortimer, Provo, Utah, argued for plaintiff-appellant. With him on the brief was John P. Moran, Staas & Halsey, Washington, D.C.

Fred E. McKelvey, Sol. and Albin Drost, Associate Sol. of the Office of the Sol., Arlington, Va., argued for defendant-appellee.

Before FRIEDMAN, ARCHER and MICHEL, Circuit Judges.

FRIEDMAN, Circuit Judge.

The question in this case, here on appeal from the United States District Court for the District of Columbia, is whether the Commissioner of Patents and Trademarks correctly held that he had no jurisdiction under 35 U.S.C. § 41(a)(7) (1982) to revive as unintentionally abandoned a patent application. The alleged unintentional abandonment was the applicant's failure to appeal the district court's earlier decision affirming a prior decision of the Patent and Trademark Office that refused to issue a patent because the claimed subject matter would have been obvious under 35 U.S.C. § 103. The district court sustained the Commissioner's refusal to revive the application. We affirm.

I

The Board of Patent Appeals and Interferences affirmed the examiner's rejection of the 37 claims in the appellant's patent application as obvious under 35 U.S.C. § 103. On appeal under 35 U.S.C. § 145, the district court held that the claims "are not patentable under 35 U.S.C. § 103 and were rejected properly by the Patent and Trademark Office." *Morganroth v. Quigg*, No. 85–3125, Order (D.D.C. April 30, 1986).

The appellant did not file an appeal from the district court's judgment. She explains this inaction on the ground that "the court's adverse decision was mailed by the clerk of the court to ... the local associate, who put it in his file and did absolutely nothing about it." She further stated that after her lead counsel had received a copy of the district court's decision, and upon "careful review of the application in the

light of Judge Green's adverse decision, it was decided to accept the Court's decision that the claims then in the application were unpatentable and to file a continuation application with new, patentable claims."

Eight months after the entry of the district court's judgment, the appellant filed with the Commissioner a petition to "revive this unintentionally abandoned application," pursuant to 37 C.F.R. § 1.137(b), which states, in pertinent part:

An application unintentionally abandoned for failure to prosecute ... may be revived as a pending application if the delay was unintentional.

Together with the petition, Morganroth submitted the documents the regulation required: a statement that the application was unintentionally abandoned, "a continuation application" with significantly amended claims that was her proposed response to the examiner's final rejection, and the requisite filing fees.

The Deputy Assistant Commissioner dismissed the petition to revive the application. He held that the application had been "terminated" rather than "abandoned," and stated that "it is manifestly inappropriate for the PTO to consider the present petition to revive under 35 U.S.C. § 41(a)7." *In re Shila Morganroth*, 6 USPQ2d 1802, 1804 (1987). The Deputy Assistant Commissioner ruled that "the PTO lacks authority to consider Morganroth's petition to revive" her patent application because the application had not been "abandoned." *Id.*

On motion for reconsideration, the Deputy Assistant Commissioner reiterated that neither the applicable regulations nor the governing statute (discussed below) gave the PTO "jurisdiction to revive," since "relief from the effect of the court's final judgment, if any is to be had, must be sought in the court, not in the PTO." *In re Shila Morganroth*, 6 USPQ2d at 1804 (1988).

The appellant then filed in the district court a "Complaint for Review of Agency Action." On cross-motions for summary judgment, the court granted that of the government and dismissed the complaint. The court found that "proceedings in Plaintiff's patent application terminated when Plaintiff failed to file a notice of appeal from this Court's previous decision," and held that "[t]he Commissioner did not act contrary to the law in concluding that he had no authority under 35 U.S.C. § 41(a)(7) to revive the Plaintiff's patent application after the proceedings terminated in this manner." *Morganroth v. Quigg*, 8 USPQ 2d 1791, 1988 WL 104962 (D.D.C.1988).

II

Although neither side addressed any jurisdictional questions in their briefs, the court itself raised two jurisdictional issues and requested the parties to discuss them at oral argument. These questions are: (A) whether the order of the Deputy Assistant Commissioner denying the petition to revive the application is judicially reviewable, and (B) if it is reviewable, whether this court or the Court of Appeals for the District of Columbia Circuit has jurisdiction over the appeal from the district court's judgment. The Commissioner submitted a lengthy letter discussing these issues, which concluded that the Deputy Assistant Commissioner's order is reviewable and that this court has jurisdiction over the appeal. We agree.

A. Prior to the creation of this court in 1982, appeals from district court decisions reviewing actions of the Commissioner lay only to the Court of Appeals for the District of Columbia Circuit. At one time, that court held that the Commissioner's refusal to revive a patent application "is not subject to judicial review." *Chessin v. Robertson*, 63 F.2d 267 (D.C.Cir. 1933). The theory apparently was that since 35 U.S.C. § 133 provided that patent applications that were deemed abandoned could be revived only if shown "to the satisfaction of the Commissioner" that a delay in response was unavoidable, the Commissioner's decision whether to revive must be wholly discretionary and therefore not reviewable.

In *Commissariat A L'Energie Atomique v. Watson*, 274 F.2d 594, 596, 124 USPQ 126, 128 (D.C.Cir.1960), the court

stated that although "[t]he Commissioner doubtless possesses a large measure of discretion," "the Commissioner's discretion cannot remain wholly uncontrolled, if ... the Commissioner's adverse determination lacked any basis in reason or common sense." Thus, judicial review was available to determine whether the Commissioner's action "was arbitrary, capricious, or an abuse of discretion." *Smith v. Mossinghoff,* 671 F.2d 533, 538, 213 USPQ 977, 982 (D.C.Cir.1982) (Judge Jack Miller of the CCPA sitting by designation, citing 5 U.S.C. § 706(2)(A) and *Commissariat*). Recently, in *Vincent v. Mossinghoff,* 230 USPQ 621 (D.D.C.1985), the court noted that review of the Commissioner's decision on a petition to revive "is proper under 28 U.S.C. § 1338(a) and 5 U.S.C. §§ 701 *et seq.* and also under 28 U.S.C. § 1361 (the general mandamus provision)."

We agree with those decisions that the Commissioner's denial of a petition to revive a patent application is subject to review in the district court. Whatever may be the scope of the Commissioner's discretion to deny a petition to revive a patent application—a question on which we express no view—the existence of that discretion does not bar judicial review of the Commissioner's decision.

B. Under 28 U.S.C. § 1295(a)(1), this court has exclusive jurisdiction over an appeal from the final decision of a district court "if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C.] § 1338." Section 1338(a), in turn, gives the district courts jurisdiction "of any civil action arising under any Act of Congress relating to patents." Thus, whether we have jurisdiction over this appeal depends upon whether the appellant's action in the district court was one "arising under" the patent laws.

In *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811 (1988), the Supreme Court held that a district court has jurisdiction under section 1338 only over "those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." Under this standard, the jurisdiction of the district court was based, at least in part, on section 1338. Although the appellant's complaint did not refer to section 1338, that fact is not dispositive in determining the basis of the district court's jurisdiction. The critical inquiry is whether in fact the complaint asserted a claim arising under the patent laws. *Christianson, supra.*

The appellant's complaint asserted such a claim. The appellant alleged that under sections 41(a)(7) and 133, she had a right to revival of her allegedly unintentionally abandoned patent application, and that the Commissioner misinterpreted those sections as precluding revival where the alleged abandonment was the failure to appeal an adverse district court judgment. The complaint also stated that if the patent application were revived, the appellant had "the legal right under Section 120 of Title 35 of the United States Code to file a continuation application and to claim the benefit of the filing date of U.S. Application Serial No. 842,108." *Morganroth v. Quigg,* No. 89–0724–JLG, Complaint at 5. Thus, the appellant's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson, supra.*

Accordingly, we have jurisdiction over this appeal.

## III

Two provisions of the patent laws deal explicitly with abandonment of patent applications. Under 35 U.S.C. § 133, if an applicant fails to prosecute an application "within six months after any action therein of which notice has been given or mailed to the applicant [or such shorter time as the Commissioner may fix] ... the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such de-

lay was unavoidable." Section 151 treats "as abandoned" an application for which, after allowance of the patent, the issue fee has not been timely paid.

The only provision specifically dealing with revival of unintentionally abandoned applications is section 41(a)(7), which is part of a general provision governing the fees the Commissioner is to charge. It sets the fee for a petition "for the revival of an unintentionally abandoned application" (or for an "unintentionally delayed payment" of the fee for issuing a patent) at $500, except that, if the petition for revival is filed under section 133 or 151, the fee is $50.

The Commissioner's regulations distinguish between and provide separately for revival of applications "abandoned for failure to prosecute," where the delay was "unavoidable" and where it was "unintentional." 37 C.F.R. § 1.137(a) and (b) (1988).

The question here is whether the Commissioner correctly ruled that under these statutory and regulatory provisions his authority to revive unintentionally abandoned applications does not cover an alleged unintentional abandonment that was the failure to appeal from a district court decision that upheld the rejection of a patent application. We agree with the district court that the Commissioner's revival authority does not cover that situation.

The statutory provisions and the Commissioner's regulations governing abandonment and revival deal with the abandonment of applications during the prosecution of those applications before the Patent and Trademark Office. They do not extend to an alleged abandonment resulting from a failure to appeal from a final district court judgment upholding the denial of a patent application.

Section 133 is part of chapter 12, which is captioned "Examination of Applications." Section 151 is part of chapter 14, which is captioned "Issue of Patents." Section 41(a)(7), which provides for the "filing" of a "petition for the revival of an unintentionally abandoned application," is part of a section that sets the fees the Commissioner is to charge in connection with various pro-

cedures before the Patent and Trademark Office. In contrast to these provisions, chapter 13, which is captioned "Review of Patent and Trademark Office Decisions" and provides for judicial review of those decisions, contains no reference to either abandonment of applications or revival of abandoned ones.

This statutory scheme indicates that the Commissioner's authority to revive abandoned applications does not extend to a case where the abandonment consisted of a failure to appeal a final district court judgment.

Section 133 had its genesis in section 12 of an 1861 statute which provided

> [t]hat all applications for patents shall be completed and prepared for examination within two years after the filing of the petition, and in default thereof, they shall be regarded as abandoned by the parties thereto; unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable.

Act of March 2, 1861, ch. 88, § 12, 12 Stat. 246, 248 (1861).

Neither this statute, nor an 1836 statute which it amended, Act of July 4, 1836, ch. 357, § 7, 5 Stat. 117, 119 (1836), provided for judicial review of the Commissioner's denial of a patent. Section 12 of the 1861 Act thus necessarily limited revival to applications abandoned during the proceedings before the Patent Office.

Section 12 was amended in 1870 to read as follows:

> [U]pon failure of the applicant to prosecute the same [application] within two years after any action therein, of which notice shall have been given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the commissioner that such delay was unavoidable.

Act of July 8, 1870, ch. 230, § 32, 16 Stat. 198, 202 (1870).

Although section 48 of that Act provided for judicial review of final rejections of patent applications, section 32 of the 1870 Act, like its predecessor, section 12 of the 1861 Act, on its face applied only to aban-

donment that occurred during the consideration of the application by the Patent Office.

The Commissioner of Patents and Trademarks is primarily responsible for the application and enforcement of these narrow technical and specialized statutory and regulatory provisions governing abandonment and revival of patent applications. His interpretation of those provisions is entitled to considerable deference. *See Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1425, 7 USPQ2d 1152, 1154 (Fed.Cir.1988) ("an agency's interpretation of a statute it administers is entitled to deference"). We have no reason to reject as unreasonable or contrary to law the Deputy Assistant Commissioner's conclusion that these provisions do not cover the alleged unintentional abandonment of a patent application that resulted from the applicant's failure to appeal from a final district court judgment that upheld the Commissioner's prior refusal to issue a patent.

## CONCLUSION

The judgment of the district court granting the Commissioner's motion for summary judgment and dismissing the complaint is AFFIRMED.