**DH TECHNOLOGY, INC., Plaintiff,**

v.

**SYNERGYSTEX INTERNATIONAL, INC., Defendant.**

No. C–92–3307.

United States District Court, N.D. California.

Aug. 7, 1996.

Peter Detkin, Michael Ladra, James Otteson, Kenneth Wilson, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Plaintiff.

Kevin Keogh, Conway, Marken Wyner, Kurant & Kern Co., Cleveland, OH, Gregory Wood, Merchant, Gould, Smith, Edell, Welter & Schmidt, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

ORRICK, District Judge.

In this action, plaintiff DH Technology, Inc. ("DHT") sues defendant Synergystex International, Inc. ("Synergystex") for patent infringement. The parties have both moved for summary judgment on the issue of whether United States Patent 5,115,493 (the "'493 patent") is unenforceable because of DHT's inequitable conduct in fraudulently paying a small entity issue fee. For the reasons hereinafter set forth, the Court grants summary judgment for Synergystex without reaching the inequitable conduct issue because, even if DHT's payment of an improper small entity issue fee was an error in good faith, it is now too late to correct the error. The Court denies summary judgment for DHT, and dismisses the action with prejudice.

## I.

On October 18, 1991, the Patent and Trademark Office ("PTO") mailed a Notice of Allowance and Issue Fee Due ("Notice") for the '493 patent, entitled "Continuous Laser Printing for Printing Over Page Boundaries," to applicant Ivan M. Jeanblanc ("Jeanblanc"). (Synergystex's Mem. of P. & A. in Supp. of Renewed Mot. for Summ. J. that the '493 Patent is Unenforceable Because of Inequitable Conduct ("Renewed Motion"), Ex. 5.) The Notice stated:

HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, *verify* your current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or

B. If the Status is the same, pay the FEE DUE shown above.

(*Id.* (emphasis added).) The Notice provided that the issue fee was due on January 21, 1992.

In September 1990, the inventors of what would later issue as the '493 patent assigned their rights in the invention to The Identification Business, Inc. ("IBI"). (Renewed Motion, Ex. 3.) On November 2, 1990, DHT executed an agreement for the purchase of the business and assets of IBI, including all intellectual property rights, and specifically including the application that would later mature into the '493 patent. (*Id.*, Ex. 4.)

On January 10, 1992, Frank Agovino ("Agovino"), of the law firm of Senniger, Powers, Leavitt & Roedel, paid a small entity issue fee for the '493 patent of $525 on behalf

of Jeanblanc, and affirmatively stated that the patent application had not been assigned. (Renewed Motion, Ex. 7.)

On May 19, 1992, the United States Patent Office issued the '493 patent, which claims certain improvements to a "continuous form" laser printer, to Ivan Jeanblanc et. al. (Elson Decl., Ex. 1.)

On August 18, 1992, DHT filed this action against Synergystex for infringement of the '493 patent. Synergystex denies infringement, and asserts various defenses, including its contention that the patent is invalid and unenforceable because DHT intentionally deceived the PTO by paying a small entity issue fee when DHT did not qualify as a small entity. Synergystex first raised its small entity fee defense in a case management conference statement, filed with the Court on October 19, 1994.

On February 16, 1995, Synergystex moved for summary judgment on various grounds, including its inequitable conduct defense based on DHT's allegedly improper payment of a small entity issue fee. On November 28, 1995, the Court denied summary judgment on that issue, and left the issue for trial.

On September 27, 1995, while the summary judgment motion was pending, DHT paid a small entity maintenance fee for the '493 patent. (Renewed Motion, Ex. 14.).

In January, 1996, Synergystex requested leave to take additional discovery into DHT's entitlement to claim small entity status. The Court granted the motion at a hearing on February 29, and filed its Order on March 5, 1996. On April 8, the Court granted Synergystex's motion to compel discovery of the documents necessary to determine DHT's entitlement to claim small entity status. DHT produced a partial set of those documents by April 26, but did not provide any explanation why the remaining documents were not produced.

On May 7, the Court vacated the May 20 trial date to allow Synergystex's renewed motion for summary judgment on inequitable conduct re: fraudulent small entity fee to be heard. The Court also issued an Order to Show Cause why the case should not be dismissed due to DHT's failure to fully comply with the Court's Orders of February 29, March 5, and April 8, 1996, compelling discovery of documents sufficient to show DHT's entitlement to claim small entity status.

## II.

After reviewing the voluminous briefing on the Order to Show Cause, it appears that compliance with the Order compelling production was substantially more difficult than anticipated by the Court. The Court is convinced that DHT expended great effort to comply with the Order and did produce all documents that it was able to locate after a reasonable search. The Court hereby discharges the Order to Show Cause.

The Order to Show Cause and the briefing in response to it, however, would not have been necessary if DHT had explained, at the time it produced the documents in April, why several months of the most important payroll records were missing. DHT shall pay Synergystex the attorneys' fees and costs Synergystex expended in briefing the Order to Show Cause, as a sanction for failure to fully comply with the Order compelling production, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure.

## III.

### A.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has made this show-

ing, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510 (citations omitted). When determining whether there is a genuine issue for trial, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted). "Summary judgment is as available in patent cases as in other areas of litigation." *Continental Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1265 (Fed.Cir.1991) (citation omitted).

### B.

The fees charged for issuance of a patent are reduced by fifty percent if the applicant is a small business concern.[1] *See* 35 U.S.C. § 41(a)(2) and (h)(1). A small business concern is defined as a company with fewer than 500 employees, including employees of affiliates. 37 C.F.R. § 1.9(d). The Manual of Patent Examining Procedure ("MPEP") provides that:

> The number of employees of a business concern is determined by counting the number of persons of the concern and its affiliates employed on a full-time, part-time, or temporary basis during the previous fiscal year of the concern and of its affiliates. The number of employees is the average over the fiscal year of the persons employed during each of the pay periods of the fiscal year.

MPEP § 509.02 at 500–18—500–19 (6th ed. 1995).

Any person seeking to establish status as a small entity must file a verified statement to that effect prior to or with the first fee paid as a small entity. 37 C.F.R. § 1.27(a). The verified statement must be signed by the owner or an official of the small entity empowered to act on its behalf, and aver that the business qualifies as a small entity. *Id.* § 1.27(c). The intent of § 1.27 is that the verified statement be signed by the person who is in the best position to know whether the business qualifies as a small entity. MPEP § 509.03 at 500–21. "Small entity status must not be established unless the person or persons signing the verified statement can unequivocally make the required self-certification." *Id.* § 509.03 at 500–23. "[A]ny attempt to improperly establish status as a small entity will be viewed as a serious matter by the [Patent] Office...." MPEP 509.03 at 500–23. Section 1.28(d)(2) of Title 37, Code of Federal Regulations, provides that establishing small entity status, or paying fees as a small entity status, improperly and with intent to deceive, is considered a fraud practiced or attempted on the PTO. Any patent obtained by fraud on the PTO (i.e., inequitable conduct) is unenforceable. *Smith Int'l Inc. v. Hughes Tool Co.,* 759 F.2d 1572, 1578 (Fed.Cir.1985).

### IV.

The undisputed facts demonstrate that DHT could not properly claim small entity status when it paid the issue fee for the '493 patent. Because it is now too late for DHT to correct its error in paying a small entity issue fee, even if the error was initially in good faith, the Court grants summary judgment for Synergystex, without the need for a showing that DHT intended to deceive the PTO.

### A.

Both parties submitted declarations from accountants attesting to the average number of employees at DHT in 1991, based on the existing payroll records from that period.

Synergystex's Certified Public Accountant, Dr. Barbara C. Luna, attests that, depending on how the missing payroll periods are accounted for, DHT had either an average of 511 employees in 1991, or more than 524.

---

1. The terms "small business concern" and "small entity" are used interchangeably.

DHT's Certified Public Accountant, Christopher A. Martinez, attests that DHT had an average of 512 employees in 1991.

Thus, both parties agree that DHT had more than 500 employees in 1991 and, therefore, was not entitled to assert small entity status for 1991, within the meaning of 35 U.S.C. § 41 and 37 C.F.R. § 1.9(d).

### B.

■ Section 151 of Title 35, United States Code, governs the consequences for payment of an insufficient issue fee. That section provides that if the issue fee indicated in the Notice is not timely paid, the application will be regarded as abandoned. Section 151 also provides that:

> Any remaining balance of the issue fee shall be paid within three months from the sending of a notice thereof and, if not paid, the patent shall lapse at the termination of this three-month period....
>
> If any payment required by this section is not timely made, but is submitted with the fee for delayed payment and the delay in payment is shown to have been unavoidable, it may be accepted by the Commissioner as though no abandonment or lapse had ever occurred.

35 U.S.C. § 151.

The Notice for the '493 patent clearly gave notice that small entity status must be verified before the small entity issue fee is paid, and that if small entity status could no longer be claimed, the fee to be paid was twice the amount shown. The PTO relies exclusively on self-certification of small entity status. MPEP § 509.03 at 500–23. When the legislation was passed creating small entity status, it was anticipated that no additional resources would be required to administer the small entity fee system. *Id.* Thus, the Court finds that the Notice constituted the PTO's sole notice that the full issue fee was due if small entity status could not be claimed. Thus, in this case, the three-month period for paying the balance of the issue fee ran from the date of the Notice, which expressly stated that the issue fee must be paid by January 21, 1992. (Renewed Motion, Ex. 5.)

If verification of small entity status truly had been undertaken, DHT would have learned that it could not claim small entity status.[2] DHT argued at oral argument that the Court should take into account the difficulty of reviewing all the relevant payroll records to determine a true head count of the average number of employees of DHT in 1991. DHT also argued that the employee head count was only slightly more than 500, and asserted that it was ridiculous to think that DHT would risk losing its patent merely to save $525 in issue fees.

The Court agrees that risking a patent for the sake of saving $525 in issue fees is foolhardy. If DHT truly found that counting its own employees was an insurmountable task, it should not have claimed small entity status. When the PTO enacted 37 C.F.R. § 1.28, which provides guidance as to the effect of improperly claiming small entity status, it received a comment from an attorney objecting to § 1.28(d)[3] because he did not have the resources to double check the reliability of the information provided to him by his client. "Revision of Patent and Trademark Fees," 1022 O.G. 29, 39 (Sept. 21, 1982). The PTO stressed that the attorney was not authorized to sign a verified statement that his client was entitled to claim small entity status, and explained that:

> The intent of paragraphs (b) and (d) of § 1.27 is that the verified statement be signed by the person in the best position to know the facts as to whether or not status as a small entity can be properly established. Insofar as the attorney's responsibilities and duty to investigate are concerned, these do not differ from those

---

**2.** Agovino stated that he investigated DHT's entitlement to claim small entity status before paying the small entity fee. (Agovino Decl. ¶¶ 3–4.) Agovino, however, also averred that the patent had not been assigned when he paid the small entity issue fee on behalf of Jeanblanc on January 10, 1992. (Renewed Motion, Ex. 7.)

**3.** Section 1.28(d) provides that any attempt to fraudulently establish status as a small entity will be considered as a fraud practiced upon the PTO.

presently owed the Office under §§ 1.56, 1.346, and 1.555.

*Id.* at 40.

There is no question that the PTO intentionally provided for harsh penalties for improper payment of small entity fees. When § 1.28 was proposed, one comment suggested that § 1.28(d) be replaced by a provision under which a "stiff fine" would be assessed against "a wrongdoer who has not paid fees in good faith." *Id.* The PTO responded:

> Assessing a fine as the only penalty against "a wrongdoer who has not paid fees in good faith" might tend to encourage the payment of incorrect fees on the theory that it is unlikely that such a matter would be brought to the attention of the Office.

*Id.*

Another comment requested that proposed § 1.28(c) be changed so that a statement explaining how an error in good faith occurred can be made on the basis of information and belief. *Id.* at 38. The PTO rejected this suggestion, but changed § 1.28(c) to provide for correction of errors made in good faith within three months after the date the error occurred, without the need for a verified statement. *Id.* at 38–39. A verified statement explaining how the error occurred was only required when attempting to correct good-faith errors more than three months after the error occurred. *Id.*

There can be no doubt that the PTO was well aware of the burdens it imposed on an applicant claiming small entity status when it enacted the relevant regulations in 1982. The PTO stressed that "any attempt to improperly establish status as a small entity will be viewed as a serious matter." *Id.* at 32.

Here, because only half of the applicable issue fee was paid, and the remainder was not paid within three months from the date of the Notice, the Court finds that the '493 patent lapsed on January 21, 1992, pursuant to 35 U.S.C. § 151.

### C.

It is undisputed that DHT's payment of an improper small entity issue fee has not been corrected. The Court now examines whether DHT's failure to pay the proper issue fee can be corrected at this late date.

### 1.

 Section 151 of Title 35, United States Code, provides that if delayed payment of the proper issue fee is shown to have been unavoidable, it may be accepted by the Commissioner as though no lapse had ever occurred. "Unavoidable delay" must be decided on a case-by-case basis, taking into account the totality of the circumstances. *Smith v. Mossinghoff,* 671 F.2d 533, 538 (D.C.Cir.1982) (interpreting 35 U.S.C. § 133). The standard for unavoidable delay is the reasonably prudent person standard. *In re Patent 4,409,763,* 7 U.S.P.Q.2d 1798, 1800 (Comm'r Pat.1988) (interpreting 35 U.S.C. § 41(c)(1)).

Here, DHT was required to verify its entitlement to claim small entity status before paying a small entity issue fee. Had it done so, it would have found that small entity status was not properly claimed. Because the consequences of not paying the correct issue fee result in lapse of the patent, the Court finds that a reasonably prudent person would have taken steps to carefully verify small entity status before paying a small entity issue fee, as the PTO regulations require. The Court finds that DHT's payment of the wrong issue fee was not unavoidable. DHT should have "exercise[d] extraordinary care to insure that so valuable a property not be lost through failure to follow laws and regulations." *Id.* at 1801.

### 2.

 The Court requested additional briefing on the applicability of 37 C.F.R. § 1.317 to the matter at hand. The parties disagree vehemently as to whether § 1.317 has any application to this case. The disputed issue is whether § 1.317 imposes a deadline beyond which a patent holder cannot cure a small entity issue fee that was erroneously paid in good faith. If it does, it is now too late for DHT to cure its improper payment of a small entity issue fee, and the patent was never enforceable. If not, then pursuant to 37 C.F.R. § 1.28(c), DHT could still correct its error at any time, if it pays the correct fee

accompanied by a statement explaining how the error in good faith occurred and how and when the error was discovered. If § 1.317 applies to the facts before us, then the Court must grant summary judgment for Synergystex, without any need for a showing of intent to defraud. This is apparently an issue of first impression.

Synergystex argues that § 1.317 demonstrates that DHT's error, even if it was inadvertent, cannot now be corrected. Section 1.317 provides in relevant part:

(a) If the issue fee paid is the amount specified in the Notice of Allowance, but a higher amount is required at the time the issue fee is paid, any remaining balance of the issue fee is to be paid within three months from the date of notice thereof and, if not paid, the patent will lapse at the termination of the three-month period.

(b) The Commissioner may accept the payment of the remaining balance of the issue fee later than three months after the mailing of the notice thereof as though no lapse had ever occurred if upon petition the delay in payment is shown to have been unavoidable. The petition to accept the delayed payment must be promptly filed after the applicant is notified of, or otherwise becomes aware of, the lapse. . . .

(c) The Commissioner may, upon petition, accept the payment of the remaining balance of the issue fee later than three months after the mailing of the notice thereof as though no lapse had ever occurred if the delay in payment was unintentional. The petition to accept the delayed payment must be:

\* \* \* \* \* \*

(4) Filed either:

(i) Within one year of the date on which the patent lapsed; or

(ii) Within three months of the date of the first decision on a petition under paragraph (b) of this section which was filed within one year of the date on which the patent lapsed. . . .

37 C.F.R. § 1.317.

DHT argues that 37 C.F.R. § 1.28 applies exclusively to errors in claiming small entity status. Section 1.28(c) provides in relevant part:

If status as a small entity is established in good faith, and fees as a small entity are paid in good faith, in any application or patent, and it is later discovered that such status as a small entity was established in error . . . the error will be excused (1) if any deficiency between the amount paid and the amount due is paid within three months after the date the error occurred or (2) if any deficiency between the amount paid and the amount due is paid more than three months after the date the error occurred and the payment is accompanied by a statement explaining how the error in good faith occurred and how and when the error was discovered. . . .

37 C.F.R. 1.28(c).

For the purposes of this litigation, there is only one significant difference between the two sections. Under § 1.28(c), there is no express time limit for correcting a good faith error in claiming small entity status. Under § 1.317, *unintentional* payment of the wrong issue fee can only be corrected within a year and three months after receiving notice of the error, while *unavoidable* payment of the wrong issue fee can be corrected at any time. The Court has already determined that DHT's improper payment of a small entity issue fee was not unavoidable. Thus, if § 1.317 applies, DHT had until January 21, 1993, to correct its error, a date that has long since passed.

DHT argues that § 1.317 applies only where a fee increase goes into effect after a notice of allowance is issued, but before the fees are due. Section 1.317 originally contained a provision limiting its application to issue fees paid prior to October 1, 1982. *See* Patent and Trademark Office Notice of Proposed Rule Making, "Changes in Procedures for Revival of Patent Applications and Reinstatement of Patents," 1143 O.G. 8–13 (Sept. 8, 1992) (proposing amendments to § 1.317). Prior to that date, the PTO determined issue fees separately for each patent, based on its length and the number of drawings printed, and billed applicants for a balance of the issue fee due. *Id.* The PTO eventually deleted reference to the 1982 date, but retained

§ 1.317 because it remained relevant when a fee change became effective before payment is received. *Id.* In accordance with 35 U.S.C. § 151 and 37 C.F.R. § 1.317, a notice is sent to applicants requesting payment of the balance of the issue fee due, and setting a three-month period for payment. *Id.* Failure to pay the balance of the issue fee due within the specified period resulted in lapse of the patent. *Id. See also In re Mills,* 12 U.S.P.Q.2d 1847, 1848 (Comm'r Pat.1989) (announcing new policy of billing patent applicants for difference between the issue fee stated in the notice of allowance and the fee in effect on the date the original fee is paid). *See also* 35 U.S.C. § 41(f) (PTO Commissioner may adjust fees annually each October 1).

DHT argues that to apply § 1.317 to this case would conflict with the express statutory provisions of § 1.28(c), which specifically permits correction of good-faith errors in payment of small entity fees, without regard to a time limitation.

Synergystex agrees with the legislative history cited by DHT, and cites the same Official Gazette announcement.[4] Synergystex, however, argues that § 1.317, by its plain language, is not limited to situations where the PTO has announced a fee increase subsequent to issuing a notice of allowance. Synergystex argues that the plain meaning of the language of the rule should control unless there is a clearly expressed legislative intent to the contrary or the plain meaning would lead to absurd results. *Dyer v. United States,* 832 F.2d 1062, 1066 (9th Cir.1987). Sections 1.317 and 1.28 are not inconsistent, according to Synergystex, because both sections require a statement of good faith if the deficiency is paid late. Because § 1.28 is silent on the date beyond which corrections cannot be made, the PTO and the Court would have to look to other regulations, i.e. § 1.317, to determine when it is too late to correct an erroneous small entity issue fee payment.

The legislative history is silent as to how §§ 1.317 and 1.28 interact, and as to whether there is a deadline beyond which errors in claiming small entity status cannot be cor-

rected. It is clear, however, that § 1.28 is not the only regulation that applies to improper payment of a small entity issue fee. Section 1.17(*l*) of Title 37, Code of Federal Regulations, provides for a reduced fee for small entities filing a petition for acceptance of delayed payment of the balance of the issue fee due, pursuant to 35 U.S.C. § 151. That fee applies if the delay in paying the correct fee is shown to have been unavoidable. Section § 1.28 says nothing about correcting unavoidable errors in paying small entity issue fees, nor does it refer to § 1.17. Thus, the Court does not find the absence of any reference to § 1.317 in the text of § 1.28 to be dispositive of whether the deadlines set forth in § 1.317 apply to improper payment of small entity issue fees.

■ Given that the PTO has expressly stated that it views an improper claim of small entity status to be a serious matter, the Court finds it implausible that the PTO intended that unintentional errors in claiming small entity status could be corrected up until the day the patent term expires, while unintentional delays in payment of an increase in the issue fee could only be corrected within a year and three months of receiving notice of the increase. The Court, thus, finds that § 1.28(c) must be read in conjunction with the deadlines set forth in § 1.317 for correcting the payment of an insufficient issue fee. Pursuant to § 1.317(c), a good-faith error in claiming small entity status, and in paying a small entity issue fee, must be corrected no later than one year and three months after the date of the notice of allowance, or within three months of the PTO's denial of a timely petition to accept late payment due to unavoidable delay.

In the ordinary situation, this will impose no hardship on patent applicants. Presumably, a small company with fewer than 500 employees will not be overly burdened in calculating an exact count of its employees for the appropriate period before claiming small entity status. Where the cost of calculating the number of employees exceeds the discount in the issue fee granted to small

---

4. DHT actually cited the Federal Register; however, the legislative history upon which DHT relies actually appears only in the Official Gazette.

entities, the applicant is free to pay the full issue fee. Indeed, where there is the slightest doubt about an applicant's entitlement to claim small entity status, the applicant would be foolish not to pay the full issue fee, given the severity of the consequences. "Small entity status must not be established unless the person or persons signing the verified statement can unequivocally make the required self-certification." MPEP § 509.03 at 500–23.

Whether DHT's improper claim of small entity status was due to its intent to defraud the PTO, or to mere inadvertence, it is now far too late for DHT to make amends. The Court finds that the '493 patent lapsed on January 21, 1992, and that the deadline for correcting an unintentional error in payment of the issue fee expired on January 21, 1993, being a year and three months from the date the Notice was issued. Thus, the '493 patent was essentially stillborn, and cannot be revived. *Cf. BEC Pressure Controls Corp. v. Dwyer Instruments, Inc.,* 380 F.Supp. 1397, 1400 (N.D.Ind.1974) (requiring strict compliance with statutory requirements for payment of issue fees); *Brenner v. Ebbert,* 398 F.2d 762, 764 (D.C.Cir.1968) ("Because little legal work of consequence is involved in tendering the issue fee, there is no need for an unlimited time within which to 'respond.'").

## V.

Accordingly,

IT IS HEREBY ORDERED that:

1. The Order to Show Cause is discharged.

2. DHT shall pay Synergystex the attorneys' fees and costs it incurred in briefing the Order to Show Cause.

3. Synergystex shall file a certificate of counsel setting forth in detail the number of hours, the hourly rate, and the total amount of fees and costs incurred in briefing the Order to Show Cause.

4. Synergystex's motion for summary judgment is GRANTED.

5. DHT's motion for summary judgment is DENIED.

6. This action is dismissed with prejudice.