**DH TECHNOLOGY, INC. (now Axiohm Transaction Solutions, Inc.), Plaintiff–Appellant,**

v.

**SYNERGYSTEX INTERNATIONAL, INC., Defendant/Cross– Appellant.**

**Nos. 97–1128, 97–1280 and 97–1453.**

United States Court of Appeals, Federal Circuit.

Sept. 1, 1998.

**1334**

Kenneth B. Wilson, Wilson Sonsini Goodrich & Rosati, of Palo Alto, California, argued for plaintiff-appellant. Of counsel on the brief were Vera M. Elson and Jennifer A. Ochs.

Gregory B. Wood, Merchant, Gould, Smith, Edell, Welter & Schmidt, Los Angeles, California, argued for defendant/cross-appellant. With him on the brief was Albert F. Davis. Of counsel was Jai Ho Rho.

Before NEWMAN, PLAGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

DH Technology, Inc. ("DHT") appeals from the decision of the United States District Court for the Northern District of California holding, on summary judgment in DHT's suit for patent infringement against Synergystex International, Inc. ("Synergystex"), that U.S. Patent No. 5,115,493 ("the '493 patent") is unenforceable because DHT incorrectly paid the small entity issue fee and because the statutorily-permitted time for correcting the error had passed. *See DH Tech., Inc. v. Synergystex Int'l, Inc.,* 937 F.Supp. 902, 903, 910, 40 U.S.P.Q.2d 1754, 1755, 1761 (N.D.Cal.1996).[1] DHT also appeals the district court's ruling requiring it

to pay Synergystex's attorney's fees and costs associated with briefing an order to show cause, as a sanction for DHT's failure to comply with the district court's discovery order. *See id.* at 904, 40 U.S.P.Q.2d at 1756–57.

Synergystex cross-appeals, challenging the district court's decision that this was not an exceptional case and that denied Synergystex's motion, made pursuant to 35 U.S.C. § 285, for attorney's fees. *See DH Tech., Inc. v. Synergystex Int'l, Inc.,* No. C–92–3307 WHO, slip op. at 1, 3 (N.D.Cal. May 28, 1997). Synergystex also challenges the district court's decision, on summary judgment, that it did not have an implied license under the '493 patent. *See DH Tech., Inc. v. Synergystex Int'l, Inc.,* No. C–92–3307 WHO, slip op. at 1, 13–17, 21 (N.D.Cal. Nov. 28, 1995).

Because the district court erred in interpreting the law governing correction of the erroneous payment of the small entity issue fee, we vacate the grant of summary judgment of unenforceability and remand for further proceedings consistent with this opinion. We also vacate the district court's denial of exceptional case status and attorney's fees because the prevailing party, as that term is used in 35 U.S.C. § 285, has yet to be determined. However, we affirm the district court's decisions concerning the imposition of sanctions and Synergystex's lack of an implied license.

## BACKGROUND

### I.

On August 15, 1990, Ivan M. Jeanblanc ("Jeanblanc"), Stephen E. Hutchison, Mark K. Virkus, and Ronald J. Johnsen filed U.S. Patent Application 07/567,839 ("the '839 application"), which disclosed a continuous laser printer that can print successive forms of varying lengths. On September 21, 1990, the inventors assigned the '839 application, along with two related applications, to The Identification Business, Inc. ("IBI"). At that time,

---

1. During this appeal, DH Technology, Inc. merged with Axiohm S.A. to form Axiohm Transaction Solutions, Inc. Because all of the documentation presented to the United States Patent

and Trademark Office and to the district court refers to DHT, we will, for consistency, refer to this party as DHT throughout this opinion.

Jeanblanc owned IBI, and IBI employed all of the named inventors. That same day, Jeanblanc executed a "Verified Statement (Declaration) Claiming Small Entity Status (37 CFR 1.9(f))—Small Business Concern," which provided:

I hereby declare that the above identified small business concern [i.e., IBI] qualifies as a small business concern as defined in 13 CFR 121.3–18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has the power to control the other, or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above [i.e., IBI] with regard to the invention. . . .

On November 2, 1990, DHT acquired IBI. DHT manufactures and sells commercial laser printers and accessories. Pursuant to the purchase agreement, by assignment, DHT acquired the '839 application. Neither the assignment from the inventors to IBI nor the assignment from IBI to DHT was recorded in the United States Patent and Trademark Office ("PTO") at that time.

On October 18, 1991, the PTO, in connection with the '839 application, issued a "Notice of Allowance and Issue Fee Due," which provided:

**HOW TO RESPOND TO THIS NOTICE:**

Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or

B. If the Status is the same, pay the FEE DUE shown above.

The notice showed that small entity status was claimed and that the issue fee was due by January 21, 1992. On January 10, 1992, Frank R. Agovino ("Agovino"), the attorney prosecuting the '839 application, paid the small entity issue fee ($525) on behalf of Jeanblanc. Agovino checked the box on the "Issue Fee Transmittal" sheet stating "This application is NOT assigned." The '839 application issued as the '493 patent, entitled "CONTINUOUS LASER PRINTER FOR PRINTING OVER PAGE BOUNDARIES," on May 19, 1992.[2]

On August 14, 1992, Agovino sent the assignments, from the inventors to IBI and from IBI to DHT, to the PTO, with instructions to record the assignment to IBI first. The PTO recorded the assignments in the order requested, effective August 14, 1992.

II.

On August 18, 1992, DHT filed suit against Synergystex, a competitor in the continuous form laser printer market. On August 20, 1992, DHT filed an amended complaint alleging that Synergystex had willfully infringed, contributorily infringed, or induced infringement of the '493 patent. On October 9, 1992, Synergystex filed its answer, in which it denied infringement, alleged that the '493 patent was invalid and unenforceable on various grounds, and counterclaimed for declaratory judgment. On July 21, 1993, Synergystex moved for summary judgment that the '493 patent was invalid, that the patent was unenforceable due to inequitable conduct, and that it had not infringed the patent. On August 26, 1993, DHT moved for summary judgment

---

2. The '493 patent underwent reexamination, and the patentability of all claims was confirmed on November 21, 1995.

on its infringement claims. In an April 14, 1994 opinion, the district court denied both parties' motions. *See DH Tech., Inc. v. Synergystex Int'l, Inc.,* No. C 92–3307 BAC, 1994 WL 163917, slip op. at *1, *3 (N.D.Cal. Apr. 14, 1994).

During an October 19, 1994 case management conference, Synergystex alleged, for the first time, "that the ['493] patent is invalid and unenforceable because DHT intentionally deceived the PTO by paying a small entity issue fee when DHT did not qualify as a small entity." *DH Tech.,* 937 F.Supp. at 904, 40 U.S.P.Q.2d at 1756. On February 16, 1995, the parties again moved for summary judgment on the same issues that had been previously presented, with DHT additionally moving for summary judgment on Synergystex's implied license defense. Synergystex had not pled the implied license defense in its answer to the amended complaint and did not raise the defense until September 16, 1993, nearly two months after the close of discovery. *See DH Tech.,* No. C–92–3307 WHO, slip op. at 13 n.4 (Nov. 28, 1995). On February 16, 1995, Synergystex moved for summary judgment that the patent was invalid and unenforceable on the ground that DHT had fraudulently paid the small entity issue fee.

In a November 28, 1995 ruling, the district court, *inter alia,* denied Synergystex's motion for summary judgment that the '493 patent was unenforceable because DHT had fraudulently paid the small entity issue fee despite not being a small entity. *See id.* at 1, 8, 13. The court did so because it determined, as far as the point was concerned, that genuine issues of material fact existed. *See id.* at 13. The district court granted DHT's motion for summary judgment on Synergystex's implied license defense on the ground that the "evidence offered by Synergystex on this defense [was] insufficient as a matter [of] law." *Id.* at 17. The court also denied the parties' motions for summary judgment on the infringement issue and granted summary judgment for DHT on certain of Synergystex's invalidity defenses. *See id.* at 21.

While the summary judgment motions were pending, on September 27, 1995, DHT erroneously paid the first maintenance fee for the '493 patent at the small entity rate.

*See DH Tech.,* 937 F.Supp. at 904, 40 U.S.P.Q.2d at 1756. DHT notified the PTO of the error on February 26, 1996. At that time, DHT corrected the erroneous underpayment and relinquished its claim of small entity status. The PTO accepted DHT's correction without issue, and this correction is not at issue in this appeal.

### III.

On January 26, 1996, Synergystex filed a motion for leave to propound one additional discovery request relating to DHT's status as a small entity. Although the discovery cutoff date of July 15, 1993 had long past, the district court granted the request during a February 29, 1996 hearing. This oral ruling later was embodied in a March 5, 1996 order, which provided:

1. Defendant Synergystex is granted leave to propound a single additional discovery request upon plaintiff DHT: "Produce documents sufficient to show the number of employees of DH Technology, Inc. and its affiliates, including the full time, part time, and temporary employees, for each pay period from January 1991 to December 1995."

2. Plaintiff DHT is ordered to produce documents responsive to this request no later than 5:00 p.m., Thursday, March 7, 1996.

*DH Tech., Inc. v. Synergystex Int'l, Inc.,* No. C–92–3307 WHO, slip op. at 3–4 (N.D.Cal. Mar. 5, 1996). In response to the discovery request, DHT did not produce documents, but instead, at approximately 5:30 p.m., on March 7, 1996, notified Synergystex that it would make its payroll records available for review at its seven locations around the world. Synergystex moved for a finding of contempt, and, in an April 8, 1996 telephonic conference, the district court noted DHT's failure to comply with its discovery order. The district court gave DHT until April 26, 1996 to comply with its order, stating:

You can comply by having the Plaintiff send photocopies of the relevant personnel records to counsel by overnight mail for Friday delivery with the Defendant bearing the copying cost and delivery cost.

Or you can provide the Defendant with affidavits attesting to the exact number of employees of DH Technology, Inc. and its affiliates, including full-time, part-time, and temporary employees for each pay period from January, 1991, to December, 1995.

In response, DHT produced a number of its payroll records, but several relevant documents still were missing. On May 7, 1996, the district court issued an order to show cause why the case should not be dismissed because of DHT's failure to comply fully with the court's order compelling the production of documents sufficient to show the number of DHT employees during the relevant periods. DHT answered by filing several declarations explaining its failure to produce certain payroll records and outlining the burden involved in complying with the court's order. In due course, Synergystex renewed its earlier motion for summary judgment, and DHT also moved for summary judgment, on the issue of whether the '493 patent is invalid because, allegedly, DHT fraudulently claimed small entity status and paid the small entity issue fee.

In an August 7, 1996 opinion, the district court addressed both the order to show cause and the summary judgment motions relating to the question of the small entity issue fee. *See DH Tech.*, 937 F.Supp. at 903–04, 40 U.S.P.Q.2d at 1755–56. The court first addressed the order to show cause, issued to DHT based on its failure to comply with discovery:

> After reviewing the voluminous briefing on the Order to Show Cause, it appears that compliance with the Order compelling production was substantially more difficult than anticipated by the Court. The Court is convinced that DHT expended great effort to comply with the Order and did produce all documents that it was able to locate after a reasonable search. The Court hereby discharges the Order to Show Cause.
>
> The Order to Show Cause and the briefing in response to it, however, would not have been necessary if DHT had explained, at the time it produced the documents in April, why several months of the most important payroll records were missing. DHT shall pay Synergystex the at-

torneys' fees and costs Synergystex expended in briefing the Order to Show Cause, as a sanction for failure to fully comply with the Order compelling production, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure.

*Id.* 937 F.Supp. at 904, 40 U.S.P.Q.2d at 1756–57.

Next, the court denied DHT's motion for summary judgment on the small entity issue fee question and granted "summary judgment for Synergystex without reaching the inequitable conduct issue because, even if DHT's payment of an improper small entity issue fee was an error in good faith, it is now too late to correct the error." *Id.* 937 F.Supp. at 903, 40 U.S.P.Q.2d at 1755. The court concluded that "[t]he undisputed facts demonstrate that DHT could not properly claim small entity status when it paid the issue fee for the '493 patent." *Id.* 937 F.Supp. at 905, 40 U.S.P.Q.2d at 1757. In that regard, the court noted that declarations from accountants for both parties showed that DHT had over 500 employees in 1991, making it ineligible for small entity status. *See id.* 937 F.Supp. at 905–06, 40 U.S.P.Q.2d at 1757–58. Accordingly, the court determined that the '493 patent lapsed on January 21, 1992, pursuant to 35 U.S.C. § 151 (the statutory provision that addresses abandonment of applications and lapse of patents for failure to pay the issue fee), because DHT had paid the small entity issue fee, which was half of the standard issue fee actually due. *See id.* 937 F.Supp. at 907, 40 U.S.P.Q.2d at 1759. Noting that DHT's improper payment of the small entity issue fee had not been corrected, the court examined whether correction was still possible. *See id.* The court concluded that correction was not possible under 35 U.S.C. § 151, and 37 C.F.R. § 1.317(b) (the regulation governing acceptance of late payment of the issue fee in cases where the patent has lapsed due to unavoidable delay in paying the issue fee), because DHT's payment of the incorrect issue fee was not "unavoidable." *See id.* 937 F.Supp. at 907–908, 40 U.S.P.Q.2d at 1759–60.

The district court then considered whether 37 C.F.R. § 1.317 limited the time for correc-

tion of the erroneous payment of the small entity issue fee or whether 37 C.F.R. § 1.28(c) (permitting correction of the erroneous, but good-faith, claim of small entity status and payment of small entity fees at any time) was the sole regulation governing correction. *See id.* at 907–910, 40 U.S.P.Q.2d at 1759–61. The court noted that "[i]f § 1.317 applies to the facts before us, then the Court must grant summary judgment for Synergystex, without any need for a showing of intent to defraud." *Id.* 937 F.Supp.at 908, 40 U.S.P.Q.2d at 1759. The court determined that if 37 C.F.R. § 1.317 applied, DHT had to correct the error by January 21, 1993, a date long past. *See id.*, 937 F.Supp. at 902, 40 U.S.P.Q.2d at 1760. The district court concluded:

> Given that the PTO has expressly stated that it views an improper claim of small entity status to be a serious matter, the Court finds it implausible that the PTO intended that unintentional errors in claiming small entity status could be corrected up until the day the patent term expires, while unintentional delays in payment of an increase in the issue fee could only be corrected within a year and three months of receiving notice of the increase. The Court, thus, finds that § 1.28(c) must be read in conjunction with the deadlines set forth in § 1.317 for correcting the payment of an insufficient issue fee. Pursuant to § 1.317(c), a good-faith error in claiming small entity status, and in paying a small entity issue fee, must be corrected no later than one year and three months after the date of the notice of allowance, or within three months of the PTO's denial of a timely petition to accept late payment due to unavoidable delay.

*Id.* at 909, 40 U.S.P.Q.2d at 1761. The district court concluded that the '493 patent lapsed on January 21, 1992, that the lapse could not be corrected after January 21, 1993 (one year and three months after the October

18, 1991 notice of allowance), and that "the '493 patent was essentially stillborn." *Id.* at 910, 40 U.S.P.Q.2d at 1761. The district court denied DHT's motion for reconsideration or to amend the judgment. *See DH Tech., Inc. v. Synergystex Int'l, Inc.,* No. C–92–3307 WHO (Nov. 15, 1996), *vacated and amended by,* No. C–92–3307 WHO (N.D.Cal. Jan. 17, 1997).

### IV.

Meanwhile, on August 2, 1996, while the case was pending before the district court, DHT filed a "Notification of Error in Payment of Issue Fee as a Small Entity" with the PTO. In so doing, DHT withdrew its small entity status and stated that small entity status "may have been claimed erroneously when the issue fee was paid on January 10, 1992." DHT resubmitted this filing on August 9, 1996, via facsimile, at the request of the PTO's Office of Petitions. On appeal, DHT claims to have had no knowledge of the district court's August 7 ruling at the time it filed these submissions. The PTO accepted the payment of the fee deficiency on November 8, 1996, citing 37 C.F.R. § 1.28(c). After learning of the district court's August 7 decision, however, the PTO vacated its ruling and held further action in abeyance pending further court action.[3]

### V.

In a March 28, 1997 opinion, the district court denied Synergystex's motion, made pursuant to 35 U.S.C. § 285, for attorney's fees. *See DH Tech.,* No. C–92–3307 WHO, slip op. at 1 (May 28, 1997). The district court stated that it had not ruled in its earlier opinions "on the issues of intent to defraud, bad faith, or inequitable conduct" and that Synergystex had not made a clear and convincing showing to justify an award of fees. *Id.* at 3. In a September 26, 1997

---

**3.** While the district court in this case concluded that correction of the erroneous payment of the small entity issue fee must satisfy the requirements of 37 C.F.R. § 1.317, *see DH Tech.,* 937 F.Supp. at 909, 40 U.S.P.Q.2d at 1761, the court in *Jewish Hospital v. IDEXX Laboratories,* 951 F.Supp. 1, 2 (D.Me.1996), held that correction was governed solely by 37 C.F.R. § 1.28(c). Given this conflict, the PTO is holding all issue fee correction submissions in abeyance pending resolution of this appeal. *See* U.S. Patent and Trademark Office, 1198 *Official Gazette* 27 (May 6, 1997). The PTO has not expressed its view on whether 37 C.F.R. § 1.28(c), 37 C.F.R. § 1.317, or both govern the timing of correction. *See Changes to Patent Practice and Procedures,* 62 Fed.Reg. 53132, 53135 (Oct. 10, 1997).

opinion, the district court awarded Synergystex attorney's fees and costs incurred in briefing the order to show cause and statutory costs as a prevailing party. *See DH Tech., Inc. v. Synergystex Int'l, Inc.*, No. C-92-3307 WHO (N.D.Cal. Sept. 26, 1997).

As noted, both parties appeal various aspects of the district court's decisions. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.

Summary judgment is proper in a case where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). We review the district court's grant of summary judgment *de novo. See Aktiebolag v. E.J. Co.*, 121 F.3d 669, 672, 43 U.S.P.Q.2d 1620, 1622 (Fed.Cir.1997) (citing *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 U.S.P.Q.2d 1373, 1377 (Fed.Cir. 1994)); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 528, 41 U.S.P.Q.2d 1001, 1004 (Fed. Cir.1996).

### II.

The statutory system of patent fees allows a qualifying small business concern, independent inventor, or nonprofit organization to pay half of the standard issue fee. *See* 35 U.S.C. § 41(a)(2), (h)(1) (1994). A party qualifying for the reduced fees is referred to as a "small entity." *See* 37 C.F.R. § 1.9(f) (1997). The regulations define a small business concern "as one whose number of employees, including those of its affiliates, does not exceed 500 persons." 37 C.F.R. § 1.9(d) (1997); *see Manual of Patent Examining Procedure* § 509.02 (6th ed. 1997) ("*MPEP*") (detailing the criteria necessary to establish small entity status). "The number of employees of a business concern is determined by averaging the number of persons of the concern and its affiliates employed on a full-time, part-time, or temporary basis during each of the pay periods for the preceding completed twelve (12) calendar months." *MPEP* § 509.02.

■ An applicant establishes small entity status by filing a verified statement, averring "that the concern qualifies as a small busi-

ness concern," with the PTO. 37 C.F.R. § 1.27(c) (1997); *see* 37 C.F.R. § 1.27(a) (1997); *MPEP* § 509.03. It is undisputed that DHT claimed small entity status and paid the small entity issue fee, despite, at the relevant time, exceeding the maximum number of employees permitted to qualify as a small business concern. *See DH Tech.*, 937 F.Supp. at 905–06, 40 U.S.P.Q.2d at 1757–58 (explaining that DHT had an average of over 500 employees in 1991, the year prior to payment of the issue fee).

■ Given DHT's error, we must address which statutory and regulatory provisions govern the correction of the erroneous payment of the small entity issue fee, a question of first impression. Statutory interpretation is a question of law, which we review *de novo. See In re Portola Packaging, Inc.*, 110 F.3d 786, 788, 42 U.S.P.Q.2d 1295, 1297 (Fed. Cir.1997); *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1549, 38 U.S.P.Q.2d 1347, 1351 (Fed.Cir.1996). On appeal, DHT argues that correction of the erroneous payment of the small entity issue fee is governed exclusively by 37 C.F.R. § 1.28(c) and that 35 U.S.C. § 151 and 37 C.F.R. § 1.317 are inapplicable to the facts of this case. For its part, Synergystex contends that the district court properly determined that the '493 patent lapsed under 35 U.S.C. § 151 for failure to pay the standard issue fee. Synergystex argues that the time for correcting an underpayment of the issue fee is governed exclusively by 37 C.F.R. § 1.317(c) and that because DHT failed to correct the underpayment within the permitted time, it cannot now correct the error. Synergystex asserts that 37 C.F.R. § 1.28(c) does not increase the time for correction specified in 37 C.F.R. § 1.317(c).

The district court concluded that the '493 patent had lapsed pursuant to 35 U.S.C. § 151. *See DH Tech.*, 937 F.Supp. at 907, 40 U.S.P.Q.2d at 1759. Section 151 provides:

If it appears that applicant is entitled to a patent under the law, a written notice of allowance of the application shall be given or mailed to the applicant. The notice shall specify a sum, constituting the issue fee or a portion thereof, which shall be paid within three months thereafter.

Upon payment of this sum the patent shall issue, but if payment is not timely made, the application shall be regarded as abandoned.

Any remaining balance of the issue fee shall be paid within three months from the sending of a notice thereof, and if not paid, the patent shall lapse at the termination of this three-month period....

If any payment required by this section is not timely made, but is submitted with the fee for delayed payment and the delay in payment is shown to have been unavoidable, it may be accepted by the Commissioner as though no abandonment or lapse ever occurred.

35 U.S.C. § 151 (1994). The district court determined that although 37 C.F.R. § 1.28(c) permits correction of the erroneous payment of the small entity issue fee at any time, *see DH Tech.*, 937 F.Supp. at 907–08, 40 U.S.P.Q.2d at 1759, section 1.317 of 37 C.F.R. limits the time for correction to a year and three months after the date of the notice of allowance, *see DH Tech.*, 937 F.Supp. at 909, 40 U.S.P.Q.2d at 1761. Section 1.28(c) of 37 C.F.R. provides:

If status as a small entity is established in good faith, and fees as a small entity are paid in good faith, in any application or patent, and it is later discovered that such status as a small entity was established in error or that through error the Patent and Trademark Office was not notified of a change in status ... the error will be excused (1) if any deficiency between the amount paid and the amount due is paid within three months after the date the error occurred or (2) if any deficiency between the amount paid and the amount due is paid more than three months after the date the error occurred and the payment is accompanied by a statement explaining how the error in good faith oc-

curred and how and when the error was discovered....

37 C.F.R. § 1.28(c) (1997).[4] Section 1.317 of 37 C.F.R. provides:

(a) If the issue fee paid is the amount specified in the Notice of Allowance, but a higher amount is required at the time the issue fee is paid, any remaining balance of the issue fee is to be paid within three months from the date of notice thereof and, if not paid, the patent will lapse at the termination of the three-month period.

(b) The Commissioner may accept the payment of the remaining balance of the issue fee later than three months after the mailing of the notice thereof as though no lapse had ever occurred if upon petition the delay in payment is shown to have been unavoidable. The petition to accept the delayed payment must be promptly filed after the applicant is notified of, or otherwise becomes aware of, the lapse....

(c) The Commissioner may, upon petition, accept the payment of the remaining balance of the issue fee later than three months after the mailing of the notice thereof as though no lapse had ever occurred if the delay in payment was unintentional. The petition must be:

. . .

(4) Filed either:

(i) Within one year of the date on which the patent lapsed; or

(ii) Within three months of the date of the first decision on a petition under paragraph (b) of this section which was filed within one year of the date on which the patent lapsed.

37 C.F.R. § 1.317 (1997).[5]

We begin our analysis with 35 U.S.C. § 151, the statutory provision governing payment of the issue fee. Pursuant to 35 U.S.C. § 151, ¶ 2, failure to pay the issue fee specified in the notice of allowance within three

---

4. The PTO amended the regulations, effective December 1, 1997. Section 1.28(c) of 37 C.F.R. remained substantively unchanged. Under the new regulation, a party need not submit a statement explaining how the error occurred and when the error was discovered. Submission of the fee deficiency will be treated as a representation that small entity status was established in good faith and small entity fees were paid in good faith. *See Changes to Patent Practice and Procedures*, 62 Fed.Reg. at 53135, 53184.

5. In the revised regulations, the substance of subsections b and c of § 1.317 have been incorporated into 37 C.F.R. § 1.137. *See Changes to Patent Practice and Procedures*, 62 Fed.Reg. at 53157, 53171, 53194–95, 53198. The new section 1.137(a) addresses unavoidable delays, and section 1.137(b) addresses unintentional delays. See id. at 53194–95.

months of the mailing of that notice results in abandonment of the application. DHT paid the issue fee specified in the notice of allowance, albeit reduced on the basis of its claimed small entity status. *See DH Tech.*, 937 F.Supp. at 903–04, 40 U.S.P.Q.2d at 1756. Therefore, the application was not abandoned pursuant to 35 U.S.C. § 151, ¶ 2.

The statute further provides that any balance of the issue fee due shall be paid within three months of "the sending of a notice thereof" or the patent shall lapse. 35 U.S.C. § 151, ¶ 3 (1994). This provision reflects a prior scheme under which the issue fee was collected in two installments, a base fee payable before the patent issued and a balance of the issue fee due payable within three months of the issue date. *See Ex parte Crissy, Spano, and Wolff,* 201 U.S.P.Q. 689, 692 (Pat.& Tr. Office Bd.App.1976); *In re Turner,* 3 U.S.P.Q.2d 1214, 1217, 1221, 1986 WL 83568 (Dept. Comm.1986) (detailing the lapse of a patent because the balance of issue fee due was not timely paid). The two-installment scheme allowed for an exact calculation of the issue fee, which at that time depended on the number of pages printed and the number of drawing sheets. *See Ex parte Crissy,* 201 U.S.P.Q. at 692. The lapse provision of 35 U.S.C. § 151, ¶ 3 is no longer relevant to the two-installment issue fee payment scheme, which was eliminated on October 1, 1982. *See Changes In Procedures for Revival of Patent Applications and Reinstatement of Patents,* 58 Fed.Reg. 44277, 44278 (Aug. 20, 1993) (hereinafter *"Changes In Procedures"*) (explaining that subsequent to October 1, 1982 all applicants were required to pay the same issue fee regardless of the size of the specification and drawings, thereby replacing the two-installment issue fee scheme).

The statutory lapse provision of 35 U.S.C. § 151, ¶ 3 also applies when a *fee increase*

takes effect after the mailing of the notice of allowance but prior to payment of the issue fee. *See In re Mills,* 12 U.S.P.Q.2d 1847, 1848, 1989 WL 274395 (Com'r Pat. & Trademarks 1989). The PTO adopted a policy to address this situation under 35 U.S.C. § 151, ¶ 3:

> The policy of the [PTO] will be that if the fee specified on the Notice of Allowance and Issue Fee Due is paid by the due date the application will not be regarded as abandoned. Applicant will be sent a notice of balance of issue fee due and given three months to pay the remainder of the issue fee. The patent will lapse if the balance of the issue fee is not paid within the allotted three months.

*In re Mills,* 12 U.S.P.Q.2d at 1848. Section 151, ¶ 3 of Title 35 thus remains relevant to the situation in which a fee increase takes effect after the mailing of the notice of allowance but prior to payment of the issue fee. *See Changes In Procedures,* 58 Fed.Reg. 44278.

The Commissioner may accept late payment of the remaining balance of the issue fee due when the delay in payment was unavoidable. *See* 35 U.S.C. § 151, ¶ 4 (1994); 37 C.F.R. § 1.317(b) (1997).[6] DHT does not challenge the district court's holding that its delay in correcting the underpayment of the issue fee was not unavoidable. *See DH Tech.,* 937 F.Supp. at 907, 40 U.S.P.Q.2d at 1759. Therefore, 35 U.S.C. § 151, ¶ 4 and 37 C.F.R. § 1.317(b) do not apply to the facts of this case. The regulations further allow the Commissioner to accept the remaining balance of the issue fee due if the delay in payment was unintentional and a petition to allow late payment is filed within one year of the date on which the patent lapsed, i.e., within a year and three months of the notice of balance of issue fee due. *See* 37 C.F.R. § 1.317(c) (1997).[7] The PTO has interpreted

6. The explanation accompanying the new regulations states that the new § 1.137(a) governs the late payment of a balance of issue fee due, which can occur when a fee increase takes effect after the mailing of the notice of allowance but prior to payment by the applicant, when the delay in payment was unavoidable. *See Changes to Patent Practice and Procedure,* 62 Fed.Reg. at 53157. In the new regulations § 1.137(a) replaces the former § 1.317(b). *See id.* at 53157–58, 53194–95.

7. In the new regulations, § 1.137(b) governs acceptance of late payment where the delay was unintentional. *See Changes to Patent Practice and Procedures,* 62 Fed.Reg. at 53157–58, 53195. The requirement that a petition to accept late payment of the balance of issue fee due be filed within one year of the date on which the patent lapsed, contained in 37 C.F.R. § 1.317(c)(4) (1997), has been deleted in the new regulations. *See id.* at 53158. However, the applicant must show that the entire delay, from the time pay-

this regulation, and the lapse provision of 35 U.S.C. § 151, ¶ 3, as applying in the situation where a fee increase occurs after the mailing of the notice of allowance. *See Changes In Procedures,* 58 Fed.Reg. at 44278; *Changes to Patent Practice and Procedures,* 62 Fed. Reg. 53132, 53157 (Oct. 10, 1997) (explaining how the new § 1.137, which incorporates the substance of § 1.317(c) (1997), applies to such a situation).

While we agree that 35 U.S.C. § 151, ¶ 3, and 37 C.F.R. § 1.317(c) apply in a case where a fee increase occurs after the mailing of the notice of allowance but prior to payment of the issue fee, we find no support for applying these provisions to the erroneous payment of the small entity issue fee. In fact, neither provision mentions small entity status. Before a patent lapses, pursuant to 35 U.S.C. § 151, ¶ 3, for failure to pay the balance of issue fee due, the PTO mails a notice of balance of issue fee due to the patentee. *See* 35 U.S.C. § 151, ¶ 3; *In re Mills,* 12 U.S.P.Q.2d at 1848; *Changes In Procedures,* 58 Fed.Reg. 44278; *Changes to Patent Practice and Procedures,* 62 Fed.Reg. at 53157. Since the PTO does not police or verify entitlement to claim small entity status, *see MPEP* § 509.03; U.S. Patent and Trademark Office, 1098 *Official Gazette* 502–03 (Jan. 3, 1989), the PTO would not be aware that an applicant, who had erroneously claimed small entity status and paid the small entity issue fee, had a balance of issue fee due. Therefore, the PTO would be unable to send the notice of balance of issue fee due pursuant to 35 U.S.C. § 151, ¶ 3. This supports the conclusion that 35 U.S.C. § 151 and 37 C.F.R. § 1.317 do not apply to the erroneous payment of the small entity issue fee.

Unlike 35 U.S.C. § 151 and 37 C.F.R. § 1.317, section 1.28 of 37 C.F.R., entitled "Effect on fees of failure to·establish status, or change status, as a small entity," specifically addresses the correction of an erroneous claim of small entity status and the erroneous payment of the small entity issue fee.

Section 1.28(c)(2) of 37 C.F.R. permits a patentee to correct the erroneous payment of the small entity issue fee at any time, provided the "payment [of the amount owing] is accompanied by a statement explaining how the error in good faith occurred and how and when the error was discovered." [8] We hold that this regulation is the sole provision governing the time for correction of the erroneous payment of the issue fee as a small entity. *See Jewish Hosp. v. IDEXX Lab.,* 951 F.Supp. 1, 2 (D.Me.1996) (holding that 37 C.F.R. § 1.28(c) governs correction of an erroneous claim of small entity status and the erroneous payment of the small entity issue fee). Our decision is consistent with current patent practice:

> 37 CFR 1.28 also provides guidance as to the effect of improperly establishing status as small entity. . . .

> When small entity status has been established in error and small entity fees have been paid in error, the matter is to be addressed under 37 CFR 1.28(c).

*MPEP* § 509.03. Because we conclude that the timing of correction of the erroneous payment of the small entity issue fee is governed exclusively by 37 C.F.R. § 1.28(c), the district court erred in its determination that the '493 patent had lapsed pursuant to 35 U.S.C. § 151 and could not be revived because 37 C.F.R. § 1.317 limited the time during which the error could be corrected.

While 37 C.F.R. § 1.28(c) governs the correction of the erroneous payment of the small entity issue fee and does not limit the time during which such an error may be corrected, the regulation does provide meaningful limits on the circumstances in which correction is permissible. A patentee may correct the erroneous payment of the small entity issue fee "[i]f status as a small entity is established in good faith" and the small entity issue fee was "paid in good faith." 37 C.F.R. § 1.28(c) (1997). The regulation additionally provides:

ment was due until the PTO grants a petition to accept late payment, was unintentional. *See id.* at 53195 (new § 1.137(b)(3)).

**8.** The amended version of § 1.28(c) does not require such a statement. Instead, a fee defi-

ciency statement submitted under this provision will be treated as a representation by the party that small entity status was established in good faith and small entity fees were paid in good faith. *See Changes to Patent Practice and Procedures,* 62 Fed.Reg. at 53135.

(d)(1) Any attempt to fraudulently (i) establish status as a small entity or (ii) pay fees as a small entity shall be considered as a fraud practiced or attempted on the Office.

(2) Improperly and with intent to deceive

(i) Establishing status as a small entity, or

(ii) Paying fees as a small entity shall be considered as a fraud practiced or attempted on the Office.

37 C.F.R. § 1.28(d) (1997); *see MPEP* § 509.03. These regulations permit correction of honest mistakes, but prevent attempts to fraudulently pay the small entity issue fee while maintaining an enforceable patent. As aptly stated by the district court:

> Presumably, a small company with fewer than 500 employees will not be overly burdened in calculating an exact count of its employees for the appropriate period before claiming small entity status. Where the cost exceeds the discount in the issue fee granted to small entities, the applicant is free to pay the full issue fee. *Indeed, where there is the slightest doubt about an applicant's entitlement to claim small entity status, the applicant would be foolish not to pay the full issue fee.*

*DH Tech.*, 937 F.Supp. at 909–10, 40 U.S.P.Q.2d at 1761 (emphasis added); *see Changes to Patent Practice and Procedure*, 62 Fed.Reg. at 53135 ("Nevertheless, an applicant or patentee can avoid undesirable results by not claiming small entity status unless it is absolutely certain that the applicant or patentee is entitled to small entity status (*i.e.*, resolving any doubt, uncertainty, or lack of information in favor of payment of the full fee).").

The district court specifically noted that it was not addressing DHT's intent in reaching its decision. *See DH Tech.*, 937 F.Supp. at 903, 908, 910, 40 U.S.P.Q.2d at 1755, 1759, 1761. On remand the district court should assess whether DHT acted in "good faith," i.e., whether DHT fraudulently established status as a small entity or fraudulently paid the small entity issue fee. *See* 37 C.F.R. §§ 1.28(c), (d) (1997). We express no opinion on this issue; rather we leave the issue to be addressed by the district court in the first instance.

### III.

As noted above, the district court ordered DHT to pay Synergystex's attorney's fees and costs associated with the order to show cause as a sanction for failing to comply with the court's order compelling the production of documents related to DHT's entitlement to claim small entity status. *See DH Tech.*, 937 F.Supp. at 904, 40 U.S.P.Q.2d at 1756–57. On appeal, DHT argues that it complied with the district court's discovery order and that the award of attorney's fees and costs was unjustified. Synergystex responds that the district court's order required actual delivery of the documents at issue and that DHT repeatedly failed to produce the documents. Synergystex also argues that, given DHT's repeated failure to comply with the district court's order, the court did not abuse its discretion in sanctioning DHT.

We review procedural matters not unique to patent law under the law of the regional circuit court where appeals from the district court would normally lie. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75, 223 U.S.P.Q. 465, 472 (Fed.Cir.1984). Therefore, we review Rule 37 sanctions under an abuse of discretion standard. *See Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1253–54, 16 U.S.P.Q.2d 1347, 1352 (Fed.Cir.1990) (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379 (9th Cir.1988)); *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir.1997). "The district court's discretion will not be disturbed unless we have a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached." *Payne*, 121 F.3d at 507.

Rule 37(b)(2) permits the court to order a party to pay the reasonable expenses, including attorney's fees, caused by that party's failure to comply with the court's discovery order. *See* Fed.R.Civ.P. 37(b)(2). While acknowledging that DHT had expended "great effort" to comply with the court's discovery order relating to the production of documents showing the number of employees at DHT during the relevant periods, the district court noted that DHT had failed to explain at the time of production why several of the

most important documents were missing. *See DH Tech.*, 937 F.Supp. at 905, 40 U.S.P.Q.2d at 1756–57. The district court concluded that DHT had failed to fully comply with its discovery order and therefore sanctioned DHT pursuant to Rule 37(b)(2). *See id.* In view of DHT's failure to timely produce the documents at issue in response to various warnings by the court, and in view of DHT's failure to provide a reason or explanation for its lack of production, we cannot say that the district court abused its discretion in awarding attorney's fees and costs expended in briefing the order to show cause. *See Payne*, 121 F.3d at 507 ("A district court's finding that one of its orders was violated is entitled to considerable weight because a district judge is best equipped to assess the circumstances of the non-compliance." (internal quotations and citation omitted)); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (the sanction of awarding attorney's fees and costs is the least harsh of the sanctions available under Rule 37(b)(2)). DHT's belated compliance with the court's order does not negate the imposition of sanctions. *See Payne*, 121 F.3d at 508.

## IV.

 Finally, we turn to the two issues raised by Synergystex in its cross-appeal. First, Synergystex argues that the district court erred in granting summary judgment on its implied license defense. *See DH Tech.*, No. C–92–3307 WHO, slip op. at 17 (Nov. 28, 1995). DHT argues that the district court properly granted summary judgment on the undisputed facts. In its amended complaint, filed August 20, 1992, DHT included the following statement, "The activities of Synergystex have been without express or implied license by DH Technology." In answering this statement, Synergystex responded:

> Defendant admits that there is no express or implied license with respect to the '493 patent but denies that such a license is required under the '493 patent to enable defendant to lawfully make, use and sell its products.

While the district court addressed the merits of Synergystex's implied license defense, the court noted that "Synergystex did not plead this license defense in its answer, and failed to formally raise the defense until September 16, 1993, nearly two months after the close of discovery." *Id.* at 13. In any event, we have carefully considered the implied license issue. Having done so, we see no reason to disturb the district court's grant of summary judgment.

Synergystex also challenges the district court's decision that this was not an exceptional case under 35 U.S.C. § 285. *See DH Tech.*, No. C–92–3307 WHO, slip op. at 1, 3 (May 28, 1997). Section 285 of title 35 provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480, 45 U.S.P.Q.2d 1498, 1504 (Fed.Cir.1998) (detailing the requirements for an award of attorney's fees under section 285). Because the case is not yet complete, any analysis of exceptional case status would be premature. We need not address Synergystex's claim given our reversal of the district court's decision on the correction of the erroneous payment of the small entity issue fee. Because the case has not yet been resolved and the prevailing party has not yet been determined, we necessarily vacate the district court's decision regarding exceptional case status. Synergystex may renew its claim for attorney's fees under 35 U.S.C. § 285 at the close of the proceedings, should it be the "prevailing party" as that term is used in the statute.

## CONCLUSION

For the foregoing reasons, we vacate the district court's decision that the '493 patent lapsed because of the erroneous payment of the small entity issue fee and could not be revived because the time during which this error could be corrected had passed. We hold that the timing of correction of the erroneous payment of the small entity issue fee is governed solely by 37 C.F.R. § 1.28(c), not 35 U.S.C. § 151 and 37 C.F.R. § 1.317. We remand for the district court to consider the arguments of the parties under the correct legal standard and to consider whether DHT met the other criteria, specified in 37 C.F.R. §§ 1.28(c), (d), for correcting the er-

ror. We also vacate the district court's decision on exceptional case status because the issue cannot be addressed until there is a prevailing party. Because the district court did not err in sanctioning DHT for its conduct during discovery and for failing to comply with the court's discovery orders, and because the court did not err in denying Synergystex's implied license defense on summary judgment, we affirm those rulings.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.*